**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 06 B 4804 |
| GWENDOLYN N. EALY, | ) | |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| | ) | |
| GWENDOLYN N. EALY, | ) | Adv. No. 06 A 1224 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Pamela S. Hollis |
| v. | ) | |
| | ) | |
| FORD MOTOR CREDIT CO., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter comes before the court on the motion of Ford Motor Credit Company to

dismiss the adversary complaint filed by Gwendolyn Ealy.  Ealy seeks to recover $2,732.72

garnished from her wages and paid to Ford.  In response to the motion to dismiss, Ealy sought

leave to file an amended complaint.

Ealy's proposed amendments do not change the court's decision on the motion to dismiss.

Therefore, leave to file the amended complaint is granted.  For the reasons stated below, the court

grants the motion to dismiss the amended complaint.

In a motion to dismiss, the facts alleged in the complaint are taken to be true.  Ealy

alleges that pursuant to a wage deduction order entered in November 2005, the following

amounts were withheld from her paycheck on the specified dates and paid either to Ford or to its

agent:

| DATE | AMOUNT |
|---|---|
| January 31, 2006 | $ 683.18 |
| February 28, 2006 | $ 683.18 |
| March 31, 2006 | $ 683.18 |
| April 28, 2006 | $ 683.18 |
| TOTAL | $ 2,732.72 |

Ealy asserts that these transfers are avoidable pursuant to 11 U.S.C. § 547 because they were transfers of her property to or for the benefit of Ford, on account of an antecedent debt owed by Ealy to Ford, made while she was insolvent, and Ford's receipt of these payments enabled it to receive more than it would have in a Chapter 7 case if the payments had not been made. Ealy filed for relief under Chapter 7 on April 28, 2006, scheduled the right to recover these payments at item 35 on her Schedule B, and claimed that right as exempt property on her Schedule C pursuant to 735 ILCS 5/12-1001(b). No objections to her exemptions were filed. Since the Chapter 7 Trustee has not sought recovery of these payments, Ealy claims that pursuant to 11 U.S.C. § 522(h) she is entitled to assert the Trustee's powers to avoid these transfers and recover the funds.

In her amended complaint, Ealy also asserts that Ford's judicial lien impairs her exemption in these wages, and she seeks to avoid the lien on that basis pursuant to § 522(f)(1). Although a debtor's attempt to avoid a judicial lien under § 522(f) is supposed to be brought by

motion pursuant to Fed. R. Bankr. P. 4003(d), the court will resolve this issue within the context

of this motion to dismiss.

The issue of Ealy's standing to maintain a claim under § 522(h) arose at the first status
hearing on this complaint.  At that time, Ealy's counsel cited for the court the case of
Washkowiak v. Glenwood Medical Group, 62 B.R. 884 (Bankr. N.D. Ill. 1986) (Ginsberg, J.).
Having reviewed Washkowiak as well as Ford's motion to dismiss, the court has determined that
the issue of standing is no longer disputed.

> While the general rule is that the trustee is the representative of the estate who
> may seek to recover a preferential transfer, a Chapter 7 debtor may assert the
> trustee's power to avoid a preferential transfer if four conditions are met: (1) the
> trustee does not seek to avoid the transfer; (2) the transfer the debtor wants to set
> aside was involuntary and not concealed by the debtor; (3) the trustee could have
> avoided the transfer under § 547; and (4) the property the debtor seeks to recover
> is exempt. 11 U.S.C. § 522(h).

Id. at 885-886 (footnote omitted).

Ealy easily satisfies the first two conditions, since her case trustee has not sought to avoid

these transfers and they were neither voluntary nor concealed by her.  As for the third condition,

that the trustee could have avoided the transfer under § 547, Ealy has pled all the elements of a

preferential transfer, and on a motion to dismiss the court takes as true the facts pled by the

plaintiff.

However, one element required under § 547 is that the transfers were made within 90

days of Ealy's bankruptcy filing.  Ealy alleges that the transfers were made at the time the wages

were actually garnished from her paycheck, which was within 90 days of her bankruptcy filing.

Ford has raised a legal issue, asserting instead that the transfers were made at the time of the

wage garnishment order, which was entered more than 90 days prepetition.  The court will not

defer to the allegation in Ealy's complaint, but will resolve this legal issue.

-3-

Ford originally cited In re Coppie, 728 F. 2nd 951 (7th Cir. 1984), for the proposition that

entry of the garnishment order created a continuing lien on Ealy's wages such that she had no

property interest in 15% of her wages at the time those wages were earned. It wisely abandoned

that argument in its reply, since Coppie was decided under Indiana law rather than the Illinois

Wage Deduction Act[1] and has been distinguished by numerous later decisions.

However, Ealy alleged in paragraph 7 of her amended complaint that a wage deduction

order was entered in November 2005. Several opinions issued by judges in this district have held

that entry of the wage garnishment order "meant that [the debtor] lost any legal interest in wages

earned and deducted up to the bankruptcy." In re Earley, 305 B.R. 837, 843 (Bankr. N.D. Ill.

2004) (citations omitted). See In re Rasberry, 264 B.R. 495, 499 (Bankr. N.D. Ill. 2001) ("the

Court concludes that once the wage deduction order was entered pre-petition, the Debtor was

divested of any claim to, or interest in, his pre-petition garnished wages"); In re Garcia, 155 B.R.

173, 175 (Bankr. N.D. Ill. 1993) ("termination of a debtor's interest will occur only upon the

court's entry of a final deduction order"); In re Weatherspoon, 101 B.R. 533, 538 (Bankr. N.D.

Ill. 1989) ("[a]t least until that order is entered, the debtor must still have an interest in the

property"); In re Nealis, 52 B.R. 329, 333 (Bankr. N.D. Ill. 1985) ("Until entry of the wage

deduction order, the debtor retained an interest which, for the purposes of § 547, could not be

transferred until the debtor acquired rights in his wages by earning them.").

---

[1]     The IWDA was amended effective January 1, 1999. "Now, instead of issuing a
summons effective for 3-4 months which permits competing wage deduction summons to be
filed, the Wage Deduction Act provides for the issuance of a single wage deduction order that is
valid until the judgment has been satisfied." 4A JEROLD S. SOLOVY, ET AL., ILLINOIS CIVIL LIT.
GUIDE § 6:138 (2006 ed.).

None of these cases, however, directly addressed the issue before the court today. Instead, the language regarding the effect of a wage deduction order was just a sentence or two, included to provide a contrast to the real issue – either the effect of the service of a wage deduction summons before a wage deduction order is entered (Garcia, Weatherspoon, Nealis), or the effect of a garnishment lien in Chapter 13 (Earley, Rasberry).

The issue before the court today, however, is whether a transfer occurs for purposes of the preference statute when a wage deduction order is entered, or when wages are later deducted from a debtor's paycheck. And there is a very recent case that considered that exact issue. In re Casias, 332 B.R. 357 (Bankr. C.D. Ill. 2005).

Casias, with brief but compelling reasoning, held that the transfer occurred when the debtor's wages were deducted and not when the wage garnishment order was entered. First, under Illinois law "a garnishment lien attaches to wages only when the judgment debtor has a right to them, and the judgment debtor has no right to them until he does work entitling him to be paid." Earley, 305 B.R. at 842 (emphasis added).

Second, 11 U.S.C. § 547(e)(3) states that for purposes of the preference statute, "a transfer is not made until the debtor has acquired rights in the property transferred. . .". Therefore, a debtor cannot transfer his wages until he acquires a right to them, and that does not occur until he performs the required services.

In this case, Ealy had no right to her wages until she performed the work required by her job. Since a wage garnishment order had been entered, when Ealy became entitled to the wages Ford's lien simultaneously attached to 15% of those wages, and the funds were immediately

transferred to Ford.  These are the relevant transfers, and they occurred within 90 days of Ealy's bankruptcy filing.

Thus, all the elements of a preference are present – or at least taken as true since this is a motion to dismiss – and the third condition enumerated in Washkowiak has been satisfied.

It is the fourth condition, the requirement that the property be exempt, that dooms Ealy's complaint and compels the court to grant the motion to dismiss.  As Judge Lefkow concluded in a factually similar case, "[t]he real issue then is whether the withheld wages are exemptible under § 522(b)." In re Givens, 240 B.R. 281 (Bankr. N.D. Ill. 1997).

Since Illinois has opted out of the federal exemption scheme, an Illinois debtor must use state-authorized exemptions.  11 U.S.C. § 522(b).  These can be found at 735 ILCS 5/12-1001, and include the following limitation:

> The personal property exemptions set forth in this Section shall not apply to or be allowed against any money, salary or wages due or to become due to the debtor that are required to be withheld in a wage deduction proceeding under Part 8 of this Article XII.

The statute had previously allowed exemption of wages withheld in a wage deduction proceeding under the "wild card" exemption of personal property, so long as the final wage deduction order had not been entered.  As of December 31, 1996, however, the limitation was extended to all funds withheld in a wage deduction proceeding, and the wild card exemption was no longer available to debtors.

As a result, pursuant to the explicit language of 735 ILCS 5/12-1001, these withheld wages were not exemptible when Ealy filed her petition.

Nevertheless, Ealy claimed these wages as exempt. Since more than 30 days passed without any objection to this exemption, pursuant to Fed. R. Bankr. P. 4003(b) the wages became exempt by default. Taylor v. Freeland & Kronz, 503 U.S. 638, 643-644 (1992). See Matter of Kazi, 985 F.2d 318, 320 (7ᵗʰ Cir. 1993) ("The Supreme Court's recent opinion in Taylor v. Freeland & Kronz leaves no doubt about the answer. Failure to file a timely objection is an absolute bar to consideration of the merit of the exemptions."). Ealy claims that consequently she has satisfied Washkowiak's fourth condition, that the property sought to be recovered is exempt.

Judge Lefkow rejected that argument in Givens, noting that "exemption by default under § 522(l) is not the equivalent of a substantive entitlement to an exemption under § 522(b). . . . Section 522(h) requires proof that [the debtor] 'could have exempted the property' under § 522(b)." 240 B.R. at 282. This court notes that different bankruptcy judges in this district have have come to different conclusions on this issue, albeit in the context of lien avoidance under § 522(f). Compare Givens and In re Franklin, Brown, Ramirez, 210 B.R. 560, 563 (Bankr. N.D. Ill. 1997) (Wedoff, J.) (lien avoidance provision only applies to an exemption to which the debtor would have been entitled to under § 522(b), not which a debtor obtained by default under § 522(l)) with In re Youngblood, 212 B.R. 593, 597-598 (Bankr. N.D. Ill. 1997) (Schmetterer, J.) (to follow Franklin, Brown, Ramirez "would be to fly in the face of the Supreme Court and the Seventh Circuit rulings [in] Taylor and Kazi") and In re Vasquez, 205 B.R. 136 (Bankr. N.D. Ill. 1997) (Squires, J.).

Ealy relies heavily on Youngblood in arguing that Ford lost the ability to object to her claim of exemption in the garnished wages, and she urges the court to reject the reasoning in

Givens and Franklin, Brown, Ramirez. However, Youngblood's precedential value was greatly diminished by a recent Seventh Circuit decision cited by neither party. In re Schoonover, 331 F. 3rd 575 (7th Cir. 2003). In that case, judgment creditor Karr garnished funds held in Schoonover's bank account. When Schoonover filed his bankruptcy petition, he claimed those previously garnished funds as exempt. Creditor Karr ignored the claim of exemption in the bankruptcy schedules but responded to a motion to avoid his lien, long after the 30 days to object to that exemption had expired. After an evidentiary hearing, the bankruptcy judge concluded that in fact the funds were not exempt.

The Seventh Circuit considered Schoonover's argument that in light of Taylor v. Freeland & Kronz, Karr had waited too long before contesting the exemption. The panel distinguished Taylor, holding that the 30 day limit on objecting to an exemption applies to unsecured creditors.

> But Karr had a judicial lien, and though this may not have given him a security interest in the accounts it did give him a valuable entitlement: to wait out the bankruptcy and enforce the lien at its conclusion, unless the debtor asked the bankruptcy court for relief. . . . Although general unsecured creditors must take the initiative by objecting, lienholders may wait for notice under § 522(f). Once they receive notice, lienholders litigate on the schedule appropriate to a proceeding under § 522(f), not the schedule for general creditors.
>
> Taylor did not get its 30-day limit from the Bankruptcy Code: all § 522(l) says is that creditors who want dibs on assets claimed as exempt must object, which Karr eventually did. The deadline came from Rule 4003(b), which deals with objections by general creditors. Motions under § 522(f) to avoid liens fall under Rule 4003(d), not Rule 4003(b) – and Rule 4003(d) does not set a 30-day schedule but instead provides that '[a] proceeding by the debtor to avoid a lien or other transfer of property exempt under § 522(f) of the Code shall be by motion in accordance with Rule 9014.' In turn, Rule 9014 leaves deadline-setting to the bankruptcy judge. The upshot is that lienholders have more time than general unsecured creditors, a dispensation essential if lienholders are to enjoy any chance to watch the proceedings from afar and enforce their liens later.

331 F. 3rd at 578.

The same result obtains here as in Schoonover. The running of the 30 day limit affects unsecured creditors, but it does not affect Ford's right to contest Ealy's attempts to avoid this lien under § 522(f).

Neither does it affect Ford's ability to contest the exemptible nature of these funds in the context of a preference complaint brought pursuant to § 522(h). In re Ryker, 315 B.R. 664, 672-673 (Bankr. D.N.J. 2004) ("[g]iven the similarity of language in § 522(f) and § 522(g)," Schoonover's conclusion in the context of § 522(f) is applicable to an adversary proceeding under § 522(h)). See In re Heintz, 198 B.R. 581, 587 (B.A.P. 9th Cir. 1996) ("Creditors who have not timely objected to the claimed exemptions are nevertheless able to challenge the validity of the debtor's exemption" when the debtor brings a preference action under § 522(h)). Ford's status as a lienholder affords it the right to raise the issue of exemptibility at the time its interests are affected.

Even without Schoonover's controlling precedent, the court respectfully declines to follow the reasoning set forth in Youngblood and Ramirez. Section 522(h), with emphasis added, states that the debtor may avoid a transfer "to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer." A debtor can exempt property recovered by a trustee under (g)(1) to the extent that the debtor could have exempted it under subsection (b) if it had never been transferred.

On the date Ealy's petition was filed, she could not have exempted these wages. 735 ILCS 5/12-1001 is quite clear that wages withheld in a wage deduction proceeding are not exemptible. Instead, on her petition date Ealy had what every debtor has – the right to claim exemptions and the possibility that, if no party objects, the property will become exempt by

default as to her unsecured creditors pursuant to the operation of § 522(l). Ealy had <u>no</u>

<u>substantive right</u> under § 522(b) to exempt the wages, only the possibility of a procedural right to

do so under § 522(l), and that is not enough. See <u>Givens</u>; <u>Franklin, Brown, Ramirez</u>.

Since Ealy could not have exempted the withheld wages, she cannot maintain a

preference action under § 522(h). As a result, Ealy has failed to state a cause of action. For all of

the reasons stated above, Ford's motion to dismiss is granted.

Date: _____ NOV - 9 2006 _____        _____
                                           PAMELA S. HOLLIS
                                           United States Bankruptcy Judge