# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 06 B 4804 |
| GWENDOLYN N. EALY, ) | |
| ) | |
| Debtor. ) | Chapter 7 |
| ) | |
| GWENDOLYN N. EALY, ) | |
| ) | |
| Plaintiff, ) | Adv. No. 06 A 1224 |
| ) | |
| v. ) | |
| ) | |
| FORD MOTOR CREDIT COMPANY, ) | Judge Pamela S. Hollis |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This matter comes before the court on Plaintiff Gwendolyn Ealy's motion to alter or amend the court's order of November 9, 2006, granting Defendant Ford Motor Credit Company's motion to dismiss this adversary complaint. For the reasons stated below, the court denies the motion to alter or amend.

### Standard for Motions to Alter or Amend

Motions to alter or amend, known colloquially as motions to reconsider, are brought pursuant to Fed. R. Civ. P. 59, made applicable in bankruptcy proceedings via Fed. R. Bankr. P. 9023. Rule 59 motions serve a narrow purpose and must clearly establish either a manifest error of law or fact or present newly discovered evidence. Federal Deposit Ins. Corp. v. Meyer, 781 F. 2nd 1260, 1268 (7th Cir. 1986).

The function of a motion to alter or amend a judgment "is not to give the moving party another 'bite of the apple' by permitting the arguing of issues and procedures that

could and should have been raised prior to judgment." In re BNT Terminals, Inc., 125 B.R. 963, 977 (Bankr. N.D. Ill. 1990) (citations omitted). Reconsideration is an extraordinary remedy which should be used sparingly. 11 Fed. Prac. & Proc. § 2810.1 (West 2006).

The Transfers Occurred Within 90 Days Before the Bankruptcy Petition Was Filed

Ealy filed the instant adversary proceeding seeking to avoid as preferential the transfers of her garnished wages to Ford pursuant to a wage deduction order. Ford argued in its motion to dismiss – and continues to argue in its response to the motion for reconsideration – that the "transfer" at issue occurred at the time of the entry of its wage deduction order, which was more than 90 days before Ealy filed her bankruptcy petition. As a result, there was no transfer "on or within 90 days before the date of the filing of the petition," as required by § 547(b)(4)(A), and thus no preference.

Although the court granted Ford's motion to dismiss for other reasons, it rejected this argument that a transfer occurs for purposes of the preference statute when a wage deduction order is entered, rather than when wages are actually deducted from the debtor's paycheck:

> [T]here is a very recent case that considered that exact issue. In re Casias, 332 B.R. 357 (Bankr. C.D. Ill. 2005).
>
> Casias, with brief but compelling reasoning, held that the transfer occurred when the debtor's wages were deducted and not when the wage garnishment order was entered. First, under Illinois law "a garnishment lien attaches to wages only when the judgment debtor has a right to them, and the judgment debtor has no right to them until he does work entitling him to be paid." Earley, 305 B.R. at 842 (emphasis added).
>
> Second, 11 U.S.C. § 547(e)(3) states that for purposes of the preference statute, "a transfer is not made until the debtor has acquired rights in the property transferred. . .". Therefore, a debtor cannot transfer

> his wages until he acquires a right to them, and that does not occur until he performs the required services.
>
> In this case, Ealy had no right to her wages until she performed the work required by her job. Since a wage garnishment order had been entered, when Ealy became entitled to the wages Ford's lien simultaneously attached to 15% of those wages, and the funds were immediately transferred to Ford. These are the relevant transfers, and they occurred within 90 days of Ealy's bankruptcy filing.

In re Ealy, 355 B.R. 685, 688 (Bankr. N.D. Ill. 2006).

The court carefully reviewed its reasoning on this point, as well as the supporting case law, and finds that its initial decision was correct. A continuing lien on wages is created when an employer is served with a wage deduction summons. See 735 ILCS 5/12-808(b) (West 2007). That lien "attaches to wages only when the judgment debtor has a right to them." In re Earley, 305 B.R. 837, 842 (Bankr. N.D. Ill. 2004). The Seventh Circuit declared that an employee "has no property right in wages that he has not yet earned, his entitlement to them being contingent on his continued employment." Harrell v. U.S., 13 F. 3rd 232, 234 (7th Cir. 1993).

Consequently, Ford's continuing lien could not attach to Ealy's wages until she had a right to those wages, which occurred when she earned them. Once she earned the wages, and Ford's lien attached to 15% of those earned wages, a transfer occurred. See 11 U.S.C. § 101(54) ("The term 'transfer' means . . . each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with – (i) property; or (ii) an interest in property."). That transfer occurred within 90 days before Ealy filed her bankruptcy petition, and so satisfies the requirements of § 547(b)(4)(A).

<u>The Transfers Enabled Ford to Receive More Than It Would Receive Under Chapter 7</u>

In its decision on the underlying motion to dismiss, once the court resolved the question of when the transfers occurred, the court found that for the purpose of deciding the motion all of the elements of a preferential transfer under § 547 had been established. See Gorski v. Troy, 929 F. 2nd 1183, 1186 (7th Cir. 1991) (in considering a motion to dismiss, the court must take all well-pleaded facts alleged as true and must construe the pleadings and all reasonable inferences in favor of the plaintiff).

In the context of this motion to alter or amend, however, the court will address the issue of whether these transfers enabled Ford to receive more than it would receive in a Chapter 7 if the transfers had not been made and if Ford had received payment of its debt to the extent provided by the provisions of Title 11. Such a finding is one of the required elements of a preference action. 11 U.S.C. § 547(b)(5).

As the court noted above, a continuing lien on wages is created when an employer is served with a wage deduction summons. See 735 ILCS 5/12-808(b). Creditors who hold a security interest are often in a stronger position than unsecured creditors when they become defendants in preference actions. See Levit v. Ingersoll Rand Financial Corp. (In re Deprizio), 874 F. 2nd 1186, 1199-1200 (7th Cir. 1989) ("[U]nder § 547(b)(5) a transfer is avoidable only to the extent the creditor received more than it would have in a Chapter 7 liquidation. A fully-secured creditor will be paid in full under Chapter 7, so there is no avoidable preference . . .").

That continuing lien created by the wage deduction summons did Ford no good, however, once Ealy set in motion the process that led to entry of her chapter 7 discharge. When she filed her petition, the automatic stay sprang into effect and prevented Ford

-4-

from taking "any act to . . . enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(5). A chapter 7 debtor's post-petition wages are not property of the bankruptcy estate but instead remain property of the debtor, and are protected from the wage deduction lien by this subsection of § 362. Compare Earley, 305 B.R. at 843 (post-petition wages are property of the estate in chapter 13 and are protected from a wage deduction lien under § 362(a)(4)).

Consequently, during the pendency of the bankruptcy case, Ealy's wages were protected by the automatic stay. A no asset report was entered in her case on June 7, 2006, and she received her discharge on September 25, 2006. After entry of the discharge the automatic stay was no longer in effect, but the discharge injunction immediately took its place.

Pursuant to 11 U.S.C. § 524(a), a discharge voids any judgment "to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . .". Under Illinois law, the wage deduction lien terminates when the underlying judgment is vacated. See 735 ILCS 5/12-808(b) ("[S]uch lien shall continue as to subsequent earnings until the total amount due upon the judgment and costs is paid, except that such lien on subsequent earnings shall terminate sooner if the employment relationship is terminated or if the underlying judgment is vacated or modified.") Since Ford's judgment was voided by Ealy's discharge, "it can no longer support a lien that attaches to property acquired after the judgment has become void." In re Chetto, 282 B.R. 215, 218 (Bankr. N.D. Ill. 2002).

It is true that "the Code provides that a creditor's right to foreclose on the [lien] survives or passes through the bankruptcy." Johnson v. Home State Bank, 501 U.S. 78, 83 (1991). See In re Schoonover, 331 F. 3rd 575, 578 (7th Cir. 2003) (a creditor's judicial lien gave "him a valuable entitlement: to wait out the bankruptcy and enforce the lien at its conclusion").

However, Ford's lien was secured only by the judgment that has now been voided by the chapter 7 discharge. The lien cannot continue ad infinitum when there is no underlying judgment to support it, and it cannot attach to property Ealy acquires after that judgment was voided. This result comports with the policy expressed in Local Loan Co. v. Hunt:

> The new opportunity in life and the clear field for future effort, which it is the purpose of the Bankruptcy Act to afford the emancipated debtor, would be of little value to the wage-earner if he were obliged to face the necessity of devoting the whole or a considerable portion of his earnings for an indefinite time in the future to the payment of indebtedness incurred prior to his bankruptcy.

292 U.S. 234, 245 (1934).

Ford received no distribution from this no asset bankruptcy case, and is not entitled to enforce its now-void judgment against Ealy's postpetition wages. Therefore, the prepetition funds it received enabled it to receive more than it would receive in this chapter 7 if the transfers had not been made and if Ford had received payment of its debt to the extent provided by the provisions of Title 11. The requirements of § 547(b)(5) have been satisfied.

<u>Ealy Loses Because She Could Not Have Exempted the Transferred Funds if the Trustee Had Avoided the Transfers</u>

Even though the requirements of 11 U.S.C. § 547(b) were either satisfied or taken as true, in order to survive the motion to dismiss Ealy still needed to demonstrate that she "could have exempted such property under subsection (g)(1) of this section [522] if the trustee had avoided such transfer." 11 U.S.C. § 522(h).

Subsection 522(g)(1) provides that a debtor may exempt property that a trustee recovers "to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred. . .".

The court found that Ealy could not maintain her preference action because the garnished wages she sought to recover could not have been exempted if they had not been transferred. As a result, Ealy had not stated a cause of action and the motion to dismiss was granted.

Ealy asks the court to reconsider whether it correctly decided that she could not have exempted her withheld wages if her trustee had avoided their transfer to Ford. Ealy suggests that the key question is whether she could have exempted the wages if they "had not been transferred."

In Illinois, there is a limitation on the exemption of personal property, such as earned wages:

> The personal property exemptions set forth in this Section shall not apply to or be allowed against any money, salary or wages due or to become due to the debtor that are required to be withheld in a wage deduction proceeding under Part 8 of this Article XII.

735 ILCS 5/12-1001.

Ealy argues, however, that the court must consider the following legal fiction: Because the transfer of her wages would be avoided by the trustee in a successful preference proceeding, those wages would regain their character as exemptible property. They would become simply earned wages, or funds in her bank account, or cash under her mattress, or any coin of the realm except wages "that are required to be withheld in a wage deduction proceeding." As a result, those funds would no longer be subject to the limitation on wages "that are required to be withheld in a wage deduction proceeding" and she could exempt them.

In the fourth brief Ealy filed since this adversary proceeding began, she mentions a case for the first time. In re Smoot, 237 B.R. 875 (Bankr. D. Md. 1999). Smoot was cited in a decision by the Court of Appeals of Maryland, the state's highest court. Bank of America v. Stine, 839 A. 2nd 727 (Md. 2003). In Stine, the Fourth Circuit certified the following question to the Court of Appeals of Maryland:

> Whether a debtor in bankruptcy may claim as exempt from the bankruptcy estate, pursuant to Maryland Code Annotated, Courts and Judicial Proceedings § 11-504(1998) wages previously garnished by a judgment creditor pursuant to Maryland Code Annotated, Commercial Law II §§ 15-601-607 (2000), when the garnishment is avoided as a preferential transfer.

839 A. 2nd at 731. The Court of Appeals of Maryland answered the question in the affirmative.

Maryland allows its debtors to exempt from execution on a judgment cash up to $6,000, as well as real or personal property up to $5,000. See MD. CODE ANN., CTS. & JUD. PROC. § 11-504(b)(5) and (f). However, another subsection of the exempt property

statute states that "[t]he exemptions in this section do not apply to wage attachments." MD. CODE ANN., CTS. & JUD. PROC. § 11-504(e).

The Court of Appeals for Maryland first determined that it should strive to interpret § 11-504(e) in a manner "that both satisfies a state interest and exists harmoniously with the federal bankruptcy legislation or policy . . . ." Stine, 839 A. 2nd at 735.

The Stine court found that allowing creditors to retain wages garnished within 90 days of bankruptcy would frustrate the "clear policy against preferential transfers and creditor favoritism." Id. at 736. Instead, there is a different and "more palatable" interpretation of section 11-504(e). Id. at 738.

Judgment creditors are already precluded from attaching any more than 25% of a judgment debtor's wages in Maryland. MD. CODE ANN., COMM. L. § 15-601.1. The more palatable and "correct interpretation" of § 11-504(e), therefore, is that it exists to prohibit debtors who are *not* in bankruptcy from stacking the exemption of 75% of their wages as provided in § 15-601.1 on top of the cash exemptions found in § 11-504(b)(5) and (f).

Moreover, the Stine court determined that 11 U.S.C. § 522(g) requires a bankruptcy court to consider

> a legal fiction pursuant to which the nature of the transferred property is restored to whatever form it took prior to the transfer. In turn, subsection (h) allows a debtor to avoid from his bankruptcy estate, transferred property to the extent that "the debtor could have exempted such property under subsection (g)(1) of this section . . . .
>
> Pursuant to 11 U.S.C. § 522(h) . . . viewing the transferred property in its form had the [debtor]'s wages not been transferred to [the creditor], they would simply constitute earned wages. Essentially, the

>federal scheme views any transfer of property within the 90 days prior to an individual's bankruptcy filing to be a preferential transfer of "earned wages," rather than as attached wages. Because the Maryland exemption scheme does not contain a provision prohibiting the exemption of preferential transfers of earned wages (nor could it contain such a provision and avoid constitutional invalidation under the Supremacy Clause), it is clear to this Court that such property, because it would constitute an avoidable preferential transfer under the Federal Bankruptcy Code, even when, prior to bankruptcy, the property was classified as wage attachments, may be claimed by a bankruptcy debtor as an exemption.

Id. at 739.

Ealy suggests that a decision from the U.S. Bankruptcy Court for the Western District of New York supports Stine's conclusion. See In re Price, 266 B.R. 572 (Bankr. W.D.N.Y. 2001). In Price, the court determined that if his wages had not been garnished, debtor would have received them in cash and could have exempted them under N.Y. DEBT. & CRED. LAW § 283 (McKinney 2007), "which allows qualified debtors to claim an exemption for cash in an amount of up to $2,500." Id. at 574.[1] Therefore, the wages were property that the debtor could have exempted if they had not been transferred to his garnishment creditor.

Price, however, is missing a crucial element that renders it useless as persuasive precedent. There is no indication that this New York exemption statute contains a limitation on exempting wages that are subject to a wage deduction proceeding.

But Illinois law does contain such a limitation. Moreover, that limitation is so different from the Maryland limitation that this court must reach a different result than Stine.

---

[1] An amendment was recently introduced into the New York Assembly which would raise the exemption for cash to $5,000. 2007 New York Assembly Bill No. 3061, New York Two (Jan. 22, 2007).

While the Maryland statute states merely, "[t]he exemptions in this section do not apply to wage attachments," the Illinois legislature went further:

> The personal property exemptions set forth in this Section shall not apply to or be allowed against any money, salary or wages due or to become due to the debtor that are required to be withheld in a wage deduction proceeding under Part 8 of this Article XII.

A final wage deduction order was entered against Ealy. As a result, 15% of her wages were "required to be withheld." Even if these transfers are avoided because they occurred within 90 days of the bankruptcy filing, the wages were still required to be withheld. They will not have been <u>actually</u> withheld, but that differs from being <u>required</u> to be withheld.

We can create the legal fiction that no transfers actually occurred. But we have not voided the final wage deduction order, and we cannot do so because it was entered more than 90 days before Ealy filed her bankruptcy petition. Therefore, 15% of Ealy's wages were "required to be withheld in a wage deduction proceeding."

Consequently, these wages are not exemptible under Illinois law even if the transfers to Ford are avoided, and the motion to reconsider must be denied.

If the court had been inclined to grant the motion to reconsider, Ford argues that it would have raised the defense provided in 11 U.S.C. § 547(c)(8). According to this subsection, plaintiffs cannot pursue preference complaints against defendants who received less than $600. While each transfer to Ford was $683.18, Ford argues that Ealy earned her wages with each day's services. Therefore, Ford was entitled to 15% of each day's wages, or $22.77.

First, the court need not even consider this argument because the motion for reconsideration is being denied. Nevertheless, the court would have rejected it because the <u>actual</u> transfers to Ford <u>did</u> exceed $600. Ford may have been entitled to the wages as Ealy earned them, but Ealy was not entitled to be paid until the end of her pay period. Presumably she would have received her earned wages had she resigned in the middle of a pay period, but the fact is that she was not paid until the end of each month, and that is when Ford received its allegedly preferential transfers. Section 547(c)(8) provides that the trustee may not avoid a transfer if "the aggregate value of all property that constitutes . . . such transfer is less than $600." Even if Ford was entitled to $22.77 per day, the aggregate value of that property was received in one transfer each month of $683.18.

For all of the reasons stated above, the motion to reconsider is denied.

Date: APR - 6 2007

_____
PAMELA S. HOLLIS
United States Bankruptcy Judge